UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

ROBERT LEE FRANKLIN,
BOOKING #19755604,
CDCR #H-57496,

Plaintiff,

vs.

JOSEPH GOMEZ, et al.,

Defendants.

Case No. 21cv252-MMA (AGS)

**ORDER DISMISSING COMPLAINT WITH LEAVE TO AMEND PURSUANT TO 28 U.S.C. § 1915A(b)**

On February 9, 2021, Plaintiff Robert Lee Franklin, incarcerated at the George F. Bailey Detention Facility in San Diego, California, filed a civil rights Complaint along with a Motion for leave to proceed in forma pauperis ("IFP"). *See* Doc. Nos. 1-2. He alleges his civil rights were violated by four private security officers employed by the corporation that owns or operates the Westfield Mall in Carlsbad, California, the CEO and four owners of that corporation, five Carlsbad Police Officers, two Deputy Public Defenders and a Deputy District Attorney, all in connection with his arrest at the Westfield Mall and subsequent conviction for theft of a medical device, which was overturned on appeal but for which he was again convicted after an allegedly coerced

1

plea agreement.  *See* Doc. No. 1 at 2-18.

On February 18, 2021, the Court denied Plaintiff's IFP motion pursuant to 28 U.S.C. § 1915(g) after finding that while incarcerated he has had at least three civil actions dismissed on the grounds they were frivolous, malicious, or failed to state a claim upon which relief can be granted, requiring he pay the civil filing fee to institute this action.  *See* Doc. No. 3.  Plaintiff has now paid the filing fee.  *See* Doc. No. 8.

# I.   Screening pursuant to 28 U.S.C. § 1915A(b)

## A.   Standard of Review

Because Plaintiff is a prisoner his Complaint requires a pre-answer screening pursuant to 28 U.S.C. § 1915A(b), which requires the Court to *sua sponte* dismiss a prisoner's complaint, or any portion of it, which is frivolous, malicious, fails to state a claim, or seeks damages from defendants who are immune from such relief.  *Rhodes v. Robinson*, 621 F.3d 1002, 1004 (9th Cir. 2010).  "The purpose of § 1915A is to ensure that the targets of frivolous or malicious suits need not bear the expense of responding." *Nordstrom v. Ryan*, 762 F.3d 903, 920 n.1 (9th Cir. 2014) (internal quote marks omitted).

The standard for determining whether a plaintiff has failed to state a claim upon which relief can be granted under § 1915A(b) is the same as the Federal Rule of Civil Procedure 12(b)(6) standard for failure to state a claim.  *Wilhelm v. Rotman*, 680 F.3d 1113, 1121 (9th Cir. 2012) (noting that § 1915A screening "incorporates the familiar standard applied in the context of failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).").  Rule 12(b)(6) requires a complaint to "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009), quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

Title 42 U.S.C. § 1983 "creates a private right of action against individuals who, acting under color of state law, violate federal constitutional or statutory rights." *Devereaux v. Abbey*, 263 F.3d 1070, 1074 (9th Cir. 2001).  Section 1983 "is not itself a source of substantive rights, but merely provides a method for vindicating federal rights

elsewhere conferred." *Graham v. Connor*, 490 U.S. 386, 393-94 (1989) (internal quotation marks and citations omitted). "To establish § 1983 liability, a plaintiff must show both (1) deprivation of a right secured by the Constitution and laws of the United States, and (2) that the deprivation was committed by a person acting under color of state law." *Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1138 (9th Cir. 2012).

### B.  Plaintiff's Allegations

Plaintiff alleges he was on his way to work on February 28, 2018, when he encountered a man yelling hysterically at the limp body of a female who appeared to have overdosed. *See* Doc. No. 1 at 7. In order to avoid police harassment from calling 911, he intended to ask an employee of the Westfield Mall in Carlsbad, California, for Narcan or an Automated External Defibrillator ("AED") device. *Id*. Plaintiff contends surveillance camera video shows him, a Black male, enter the parking lot of the Mall through a hole in a perimeter fence near a ravine, approach the employee entrance of a building, and not finding anyone, take an AED device and return to the ravine though the hole in the fence. *Id*. The video shows him reenter the parking lot though the hole in the fence a short time later, approach Defendant Westfield Mall Security Officer Mendoza, and return the AED device opened and used. *Id*. at 8. Plaintiff told Defendant Mendoza that a woman had overdosed in the ravine and the AED device had worked well to assist her. *Id*. When Defendant Mendoza said he wanted to make a report, Plaintiff replied he was late for work and gave his home address where he could be reached to answer any questions. *Id*.

Plaintiff alleges three additional Westfield Mall Security Officers, Defendants Martinez, Burton, and Hernandez, arrived and "began asking insulting questions," and used degrading terms to refer to the "dope fiend in that ravine" as "Black garbage." *Id*. Plaintiff informed the officers that the overdose victim was a White woman and the other people in the ravine were White and Mexican. *Id*. As the security officer Defendants were asking Plaintiff why he did not wait for an employee to help him with the AED device, a Carlsbad Police car arrived. *Id*. at 9. The video shows Defendant Carlsbad

Police Officer John Doe 1 place Plaintiff in handcuffs. *Id*. Plaintiff claims he was arrested for being a Black man at the Westfield Mall. *Id*. He contends the video shows the four Westfield Mall Security Officer Defendants telling Defendant Carlsbad Police Officer John Doe 1 that Plaintiff had stolen the AED device. *Id*. Plaintiff demanded they view the security video footage showing him using the AED device to save a life and then returning it, and Defendant John Doe 1 went into the security office and viewed the video. *Id*. Defendant John Doe 1 returned and began asking Plaintiff questions which he "refused to answer in violation of my Miranda." *Id*. Defendant John Doe 1 told Plaintiff the video showed everything except what happened in the ravine, and asked Plaintiff questions about what drugs were being used by which persons in the ravine. *Id*. Plaintiff claims the questions were irrelevant, a harassing attempt to make him a "snitch," and based on an attitude by everyone involved that Black people are to be treated differently than White people when it comes to rendering emergency aid at the Westfield Mall. *Id*. at 9-10.

Plaintiff alleges the surveillance video then shows Defendant Carlsbad Police Officer John Doe 2 arrive, insult Plaintiff, enter the security office, and return to ask the same questions Defendant Officer John Doe 1 had asked. *Id*. at 10. Defendants Carlsbad Police Officers Jane Doe 3 and John Doe 4 arrived and made similar harassing and defamatory comments to Plaintiff. *Id*. Defendant Carlsbad Police Sergeant Gomez arrived, viewed the security video footage, heard from the Westfield Security Officer Defendants who accused Plaintiff of stealing the AED device, told Plaintiff that the video confirmed his story up to the point where he went through the fence, and asked Plaintiff why he refused to answer questions which was making matters worse. *Id*. at 11. Defendant Gomez allegedly said Plaintiff "must be one of them," referring to the "dope fiends" in the ravine, and, in retaliation for not cooperating with the officers, arrested him. *Id*. He was taken to jail where he was allegedly illegally searched. *Id*.

Plaintiff alleges Defendant Deputy District Attorney Yoon saw that the surveillance video showed no crime was committed but charged Plaintiff with theft of a

medical device and maliciously prosecuted him solely on the basis of his race.  *Id*. at 11-12.  He alleges Defendants Deputy Public Defenders Bartosik and Valdovinos refused to file a motion to reduce the charge from a felony to a misdemeanor pursuant to the provisions of Proposition 47 and refused to seek dismissal of the charges based on prosecutorial misconduct of charging a misdemeanor as a felony.  *Id*. at 13-14.  Plaintiff alleges that although his jury viewed the surveillance video which showed no crime was committed, he was convicted because the attorney Defendants sabotaged the trial and the jury instructions.  *Id*. at 14.  He states the appellate court reversed his conviction on April 15, 2019, on the basis that the video shows no theft had occurred as Plaintiff is seen voluntarily returning the AED device.[1]  *Id*.

Plaintiff alleges charges were refiled against him in secret proceedings and he was never served with or notified of the refiled charges, and that he was coerced into pleading guilty to the refiled charges by Defendants Deputy District Attorney Yoon and Deputy Public Defenders Bartosik and Valdovinos.  *Id*. at 15.  He alleges Defendant Westfield Mall CEO John Doe 5 refused to drop the charges, refused to testify at trial regarding

---

[1]  The Court takes judicial notice of the appellate court opinion referenced in the Complaint, which noted that Plaintiff was convicted by a jury of felony theft of property with a value exceeding $950, which was reduced to a misdemeanor at sentencing, pleaded guilty to possession of a controlled substance and narcotics paraphernalia, and was sentenced to a total term of two and one-half years in prison.  *People v. Franklin*, 2019 WL 1593887 at *1 (Apr. 15, 2019).  The court reversed the theft conviction due to the failure of the trial court to *sua sponte* instruct the jury on the elements of larceny, concluding:

> In the instant case, the evidence was far from overwhelming on the issue of whether the AED device was taken with the intent to permanently deprive the mall of its possession.  As we have explained, the AED device is available to the public for use in a medical emergency, and Franklin had the AED device in his possession for only two hours when he emerged from the ravine, chose to walk toward a mall security guard instead of attempting to avoid him, admitted to the security guard that he had taken the AED device from the mall, and then cooperated in giving the AED device to the security guard.  Under those circumstances, overwhelming evidence does not support a finding that the AED device was taken with the intent to permanently deprive the mall of its possession.  Although neither party focused at trial on the issue of whether the AED device was stolen, it was the People's burden to establish that element, and if properly instructed on the elements of theft by larceny the jury could reasonably have found that the People did not meet their burden.  Therefore, we conclude that the instructional error was not harmless beyond a reasonable doubt.

*Id*. at *5.

racial discrimination at the Mall, and knowingly allowed his security officers to racially discriminate against Black persons. *Id*. at 16-17.  He alleges he wrote letters to Defendants Westfield Mall owners John Does 6-10 requesting they intervene on his behalf, but they did not respond and are operating the Mall under a government contract, allowing and profiting by racial discrimination at the Mall. *Id*. at 6, 17-18.

Plaintiff claims Defendants violated his rights to be free from racial discrimination, retaliation, defamation, cruel and unusual punishment, harassment, coercion, torture, false arrest, infliction of emotional distress and malicious prosecution, as protected by the Fifth, Sixth, Thirteenth and Fourteenth Amendments. *Id*. at 7, 18.  He seeks monetary damages and an injunction preventing Defendants from defaming, retaliating, or discriminating against him on the basis of race when he shops at the Westfield Mall. *Id*. at 19.

### C.   Application of 28 U.S.C. § 1915A(b)

#### 1.   Attorney Defendants

Plaintiff claims Defendant Deputy District Attorney Yoon subjected him to malicious prosecution, false arrest, false imprisonment, racial discrimination, coercion, torture, intentional infliction of emotional distress, harassment, and defamation by prosecuting him despite knowing the surveillance video exonerated him, by prosecuting him based only on his race, and by refiling charges in secret after his conviction was overturned on appeal. *See* Doc. No. 1 at 5, 11-12, 15.  He claims Defendants Deputy Public Defenders Bartosik and Valdovinos subjected him to malicious prosecution, racial discrimination, intentional infliction of emotional distress, harassment, torture, and false arrest when they failed to file motions to reduce the felony charge to a misdemeanor, sabotaged the trial and jury instructions to convict him, and coerced him into pleading guilty after his conviction was overturned on appeal. *Id*. at 4-5, 13-14.

Defendant Yoon is entitled to absolute prosecutorial immunity because the allegations involve the act of prosecuting Plaintiff. *See Van de Kamp v. Goldstein*, 555 U.S. 335, 341 (2009) (state prosecutors are entitled to absolute prosecutorial immunity

for acts taken in their official capacity); *Imbler v. Pachtman*, 424 U.S. 409, 427, 430-31 (1976) (holding prosecutors absolutely immune from civil suits for damages under § 1983 for initiating criminal prosecutions and presenting cases); *Olsen v. Idaho State Bd. of Medicine*, 363 F.3d 916, 922 (9th Cir. 2004) ("Absolute immunity is generally accorded to judges and prosecutors functioning in their official capacities."). As to Defendants Deputy Public Defenders Bartosik and Valdovinos, "a public defender does not act under color of state law when performing a lawyer's traditional functions as counsel to a defendant in a criminal proceeding." *Polk County v. Dodson*, 454 U.S. 312, 325 (1981).

Accordingly, the claims against Defendants Deputy District Attorney Yoon and Deputy Public Defenders Bartosik and Valdovinos are dismissed. *See Rhodes*, 621 F.3d at 1004 (noting that prisoner complaints require a pre-answer screening which requires the Court to *sua sponte* dismiss a prisoner's complaint, or any portion of it, which is frivolous, malicious, fails to state a claim, or seeks damages from defendants who are immune); *Tsao*, 698 F.3d at 1138 ("To establish § 1983 liability, a plaintiff must show both (1) deprivation of a right secured by the Constitution and laws of the United States, and (2) that the deprivation was committed by a person acting under color of state law.").

Because it is absolutely clear Plaintiff cannot cure the pleading defects with respect to these Defendants, the dismissal is without leave to amend. *See Rosati v. Igbinoso*, 791 F.3d 1037, 1039 (9th Cir. 2015) ("A district court should not dismiss a pro se complaint without leave to amend unless 'it is absolutely clear that the deficiencies of the complaint could not be cured by amendment.'") (quoting *Akhtar v. Mesa*, 698 F.3d 1202, 1212 (9th Cir. 2012)).

### 2.    Private Party Defendants

Plaintiff claims Westfield Mall Security Officers Mendoza, Martinez, Burton, and Hernandez, as well as John Doe 5 CEO of the corporation which owns and operates the Westfield Mall and John Does 6-10 owners of the Westfield Mall, are all liable for the constitutional violations which occurred as a result of his arrest and conviction for theft

of the AED device and for discriminatory practices at the Mall.  Plaintiff must allege sufficient fact to show these Defendants deprived him "of a right secured by the Constitution and laws of the United States" while "acting under color of state law." *Tsao*, 698 F.3d at 1138.

"We start with the presumption that conduct by private actors is not state action" within the meaning of § 1983.  *Florer v. Congregation Pidyon Shevuyim, N.A.*, 639 F.3d 916, 922 (9th Cir. 2011); *see also Price v. State of Hawaii*, 939 F.2d 702, 707-08 (9th Cir. 1991) ("[P]rivate parties are not generally acting under color of state law.").  Plaintiff bears the burden to plead and prove state action by a private defendant.  *Lugar v. Edmondson Oil Co*., 457 U.S. 922, 937 (1982).  The actions of a private individual or entity may properly be attributed to the government for purposes of § 1983 if at the time of an alleged constitutional violation (1) the private actor was performing a public function; (2) the private actor was engaged in joint activity with the government; (3) the private party acted under governmental compulsion or coercion; or (4) there was a sufficient nexus between the government and the private actor.  *Kirtley v. Rainey*, 326 F.3d 1088, 1092-95 (9th Cir. 2003).

In order to satisfy the public function test, Plaintiff must show that the function of the private security guards is "both traditionally and exclusively governmental." *Id.* at 1093 (quoting *Lee v. Katz*, 276 F.3d 550, 555 (9th Cir. 2002)).  The joint action test asks whether "the State has so far insinuated itself into a position of interdependence with the private entity that it must be recognized as a joint participant in the challenged activity. This occurs when the State knowingly accepts the benefits derived from unconstitutional behavior." *Id.* (quoting *Parks Sch. of Bus., Inc. v. Symington*, 51 F.3d 1480, 1486 (9th Cir. 1995)).

"The compulsion test considers whether the coercive influence or 'significant encouragement' of the State effectively converts a private action into a government action." *Id.* at 1094 (citing *Sutton v. Providence St. Joseph Med. Ctr.*, 192 F.3d 826, 836-37 (9th Cir. 1999)).  Finally, "[t]he nexus test asks whether 'there is such a close nexus

between the State and the challenged action that the seemingly private behavior may be fairly treated as that of the State itself.'" *Id.* at 1094-95 (quoting *Brentwood Acad. v. Tennessee Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295 (2001)).  However, "even facts that, standing alone, would require a finding of state action 'might be outweighed in the name of some value at odds with finding public accountability in the circumstances.'" *Id.* at 1095 (quoting *Brentwood*, 531 U.S. at 303).  The ultimate issue in applying these tests is whether "the alleged infringement of federal rights is fairly attributable to the government."  *Sutton,* 192 F.3d at 835.

The allegations that the Mall security officer Defendants made the surveillance video and their reports available to the responding Carlsbad Police Officers who then arrested Plaintiff does not establish state action.  *See Stanley v. Goodwin*, 475 F.Supp.2d 1026, 1039 (D. Haw. 2006) (finding private store security guard who detained plaintiff for shoplifting and showed surveillance video to responding arresting police officer not acting under color of state law), aff'd, 262 F.App'x. 786 (9th Cir. 2007); *Hodges v. Holiday Inn Select*, 2008 WL 1945532, at *3-4 (E.D. Cal. 2008) (private security guards not state actors where they had to call police to make an arrest); *but see Walker v. City of Hayward*, 2008 WL 2357249, at *4 (N.D. Cal. 2008) (private security guards adequately alleged to act under color of state law where police were alleged to have arrested plaintiff following a customary policy whereby they arrest individuals based solely on reports made by a private party without using independent judgment or conducting an independent investigation).

Here, Plaintiff alleges the police officers conducted an independent investigation by viewing the security video footage, interviewing the security guards, and attempting to question Plaintiff.  There are no allegations the private security officer Defendants were involved in any way with the decision to arrest Plaintiff other than providing facts to the responding arresting officers, or that they participated in Plaintiff's detention in any way. Although he alleges the security officer Defendants accused him of stealing the AED device, he also alleges the police officer Defendants conducted an independent

investigation.  In fact, Plaintiff alleges it was immediately after he gave his home address to Defendant Westfield Security Officer Mendoza with instructions to contact him at home with any questions for his report when the first Carlsbad Police Officer arrived and handcuffed and arrested him based solely on his race.  Thus, in addition to failing to allege the private security officer Defendants were acting under color of state law, Plaintiff has failed to allege they participated in the alleged constitutional violations arising from his arrest, incarceration, or conviction.  *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989) ("Liability under section 1983 arises only upon a showing of personal participation by the defendant" in the alleged deprivation of rights).

The only allegations against the CEO and owners of the Westfield Mall are that they acquiesced in and profited by the racial discrimination which Plaintiff alleges exists at the Westfield Mall, which he contends operates under a government contract, and that they refused to respond to his letters asking for help in proving his allegations.  Plaintiff has not alleged a § 1983 claim based on these Defendants' acquiescence to the alleged civil rights violations by their employees because there is no respondeat superior liability under § 1983.  *Iqbal*, 556 U.S. at 677.  Neither has he alleged they acted under color of state law.  *See Lugar*, 457 U.S. at 936-37 (private corporation does not act under color of law unless its actions are fairly attributable to the government).

Although private actors acting under provisions of a government contract can be found to be state actors, *see West v. Atkins*, 487 U.S. 42, 49-50 (1988) (holding that private corrections employees under contract with State amenable to § 1983 suit), Plaintiff's vague and conclusory allegation that the Mall operates under a government contract is insufficient to state a claim, as is his allegation that these Defendants acquiesced in and profited from the type of discrimination Plaintiff allegedly faced, because such "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to state a § 1983 claim.  *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).

Likewise, Plaintiff's allegation that these Defendants failed to respond to his letters asking them to intervene to help him at his trial is insufficient to state a claim because a private employer is liable only "when the employer is the driving force behind the constitutional violations alleged against its employees, who are operating as state actors." *Stanley*, 475 F.Supp.2d at 1038 (allegation that CEO is responsible for operation of corporation standing alone is insufficient to state § 1983 claim).  Plaintiff has failed to allege facts sufficient to demonstrate these Defendants had any direct involvement in the alleged constitutional violations by their employees.  *See Taylor*, 880 F.2d at 1045 ("Liability under section 1983 arises only upon a showing of personal participation by the defendant" in the alleged deprivation of rights).

Accordingly, the claims against Defendants Westfield Security Officers Mendoza, Martinez, Burton and Hernandez, John Doe 5 CEO of the corporation which owns and operates the Westfield Mall, and John Does 6-10 owners of the Westfield Mall are dismissed.  *See Tsao*, 698 F.3d at 1138 ("To establish § 1983 liability, a plaintiff must show both (1) deprivation of a right secured by the Constitution and laws of the United States, and (2) that the deprivation was committed by a person acting under color of state law.").  Because Plaintiff is proceeding without counsel, and he has now been provided with notice of his Complaint's deficiencies, the Court will grant him leave to amend if he wishes to attempt to state a claim against these Defendants.  *Rosati*, 791 F.3d at 1039 ("A district court should not dismiss a pro se complaint without leave to amend unless 'it is absolutely clear that the deficiencies of the complaint could not be cured by amendment.'") (quoting *Akhtar*, 698 F.3d at 1212).

### 3.    Police Officer Defendants

Plaintiff claims the Carlsbad Police Officer Defendants are liable for false arrest, racial discrimination, intentional infliction of emotional distress, harassment, torture, insult, retaliation, and defamation.  *See* Doc. No. 1 at 3.  He alleges Defendant Carlsbad Police Officer John Doe 1 placed him in handcuffs and arrested him for being a Black man at the Westfield Mall, and after viewing the security video asked Plaintiff questions

which he "refused to answer in violation of my Miranda." *Id*. at 9.  Plaintiff alleges Defendant John Doe 1 told him the video shows everything except what happened in the ravine and asked about what drugs were being used by who in the ravine.  *Id*.  Plaintiff claims the questions were irrelevant, amounted to a harassing attempt to make him a "snitch," and were based on an attitude by everyone involved that Black people are treated differently than White people when it comes to rendering emergency aid at the Westfield Mall.  *Id*. at 9-10.

Plaintiff alleges the surveillance video shows Defendant Carlsbad Police Officer John Doe 2 arrive, insult Plaintiff, enter the security office, and return to ask the same questions Defendant Officer John Doe 1 had asked.  *Id*. at 10.  Defendants Carlsbad Police Officers Jane Doe 3 and John Doe 4 then arrived and made harassing and defamatory comments to Plaintiff.  *Id*.  Defendant Carlsbad Police Officer Sergeant Gomez arrived, viewed the security video footage, and reviewed the statements of the Westfield Security Officers which accused Plaintiff of stealing the AED device, told Plaintiff that the video confirmed his story up to the point where he went through the fence, and asked Plaintiff why he refused to answer questions which was making matters worse.  *Id*. at 11.  Defendant Gomez said Plaintiff "must be one of them," referring to the "dope fiends" in the ravine, and, in retaliation for not cooperating, arrested him.  *Id*.

The Complaint fails to state a claim against Defendants Carlsbad Police Officers John Doe 2, Jane Doe 3, and John Doe 4, who are only alleged to have made harassing, defamatory and insulting comments to Plaintiff.  The mere making of threats or harassing comments does not give rise to a civil rights claim under § 1983.  *See Keenan v. Hall*, 83 F.3d 1083, 1092 (9th Cir. 1996), amended by 135 F.3d 1318 (9th Cir. 1998) (verbal harassment is not cognizable as a constitutional deprivation under § 1983); *Oltarzewski v. Ruggiero*, 830 F.2d 136, 139 (9th Cir. 1987) (verbal harassment or abuse is not constitutional deprivation under § 1983).  The Complaint is therefore dismissed with respect to Defendants Carlsbad Police Officers John Doe 2, Jane Doe 3, and John Doe 4.

Plaintiff alleges Defendant Carlsbad Police Officer John Doe 1 handcuffed and arrested him solely on the basis of his race after viewing the video showing no crime was committed.  He alleges Defendant Carlsbad Police Sergeant Gomez, after viewing the video showing no crime had been committed, arrested him based on his race, in retaliation for invocation of his *Miranda* rights, and in an attempt to coerce him into becoming an informant regarding who was using what type of drugs in the ravine.  In order to state a claim of false arrest, Plaintiff must allege he was arrested without probable cause.  *See Yousefian v. City of Glendale*, 779 F.3d 1010, 1014 (9th Cir. 2015) (holding that absence of probable cause is an essential element of a claim for false arrest under § 1983).  "Police have probable cause to arrest where 'the facts and circumstances within their knowledge and of which they (have) reasonably trustworthy information (are) sufficient to warrant a prudent man in believing that the (suspect) had committed or was committing an offense.'"  *Beier v. City of Lewiston*, 354 F.3d 1058, 1064 (9th Cir. 2004) (quoting *Beck v. Ohio*, 379 U.S. 89, 91 (1964)).

Plaintiff indicates in his Complaint that he was convicted of the crime for which he was arrested, theft of the AED device, and cites to the appellate opinion overturning his conviction which, as set forth above in footnote 1, makes clear that probable cause existed to arrest him for that offense.  *Id.*; s*ee also Roberts v. McAfee, Inc.*, 660 F.3d 1156, 1166 (9th Cir. 2011) ("[u]nder California law, the indictment itself created a *prima facie* presumption that probable cause existed for the underlying prosecution.") (internal quote marks omitted).  The same is true with respect to Plaintiff's claim he was arrested in retaliation for invoking his *Miranda* rights and for his unwillingness to "snitch" on any drug users in the ravine.  *See Nieves v. Bartlett*, 587 U.S. __, __, 139 S.Ct. 1715, 1724 (2019) ("The plaintiff pressing a retaliatory arrest claim must plead and prove the absence of probable cause for the arrest.").

With respect to Plaintiff's allegations that he was arrested by Defendant Carlsbad Police Sergeant Gomez and arrested and handcuffed by Defendant Carlsbad Police Officer John Doe 1 based on his race, the Court liberally construes these allegations of

racial discrimination as an attempt by Plaintiff to invoke his right to equal protection under the law.  *See Akhtar*, 698 F.3d at 1212 (in pro se civil rights cases, the court must construe the pleadings liberally and afford the plaintiff the benefit of any doubt); *see also Erickson v. Pardus*, 551 U.S. 89, 94 (2007) ("A document filed pro se is to be liberally construed, and a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.") (citation and internal quotation marks omitted).  In giving liberal interpretation to a pro se complaint, however, the Court may not supply essential elements of a claim that were not initially pled, *Byrd v. Maricopa County Sheriff's Dep't*, 629 F.3d 1135, 1140 (9th Cir. 2011), nor accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences."  *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

To state an equal protection claim, Plaintiff must allege facts to plausibly show Defendants intentionally discriminated against him based on his membership in a protected class.  *Hartmann v. California Dept. of Corrections and Rehabilitation*, 707 F.3d 1114, 1123 (9th Cir. 2013).  "The central purpose of the Equal Protection Clause of the Fourteenth Amendment is the prevention of official conduct discriminating on the basis of race."  *Washington v. Davis*, 426 U.S. 229, 239 (1976).  "Intentional discrimination means that a defendant acted at least in part *because* of a plaintiff's protected status."  *Maynard v. City of San Jose*, 37 F.3d 1396, 1404 (9th Cir. 1994).

The Complaint contains no factual allegations to plausibly suggest Defendant Sergeant Gomez arrested him because of his race or that Defendant Carlsbad Police Officer John Doe 1 handcuffed and arrested him because he is Black.  Rather, Plaintiff merely alleges that because the surveillance video they viewed showed he did not commit a crime and he is Black, the only possible explanation is that they acted out of racial motivation.  Those allegations are insufficient to allege racial discrimination, particularly in light of the evidence that probable cause existed to arrest him.  *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971) ("The language requiring intent to deprive of equal protection, or

equal privileges and immunities, means that there must be some racial, or perhaps some otherwise class-based, invidiously discriminatory animus behind the [defendant]'s actions."); *Sprewell*, 266 F.3d at 988 (holding the court need not accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences."); *Mitchell v. Las Vegas Metropolitan Police Dept., et al.*, 2021 WL 808735, *5 (D. Nev. Mar. 3, 2021) (finding plaintiff's identification as an "African American" and a "[B]lack man" insufficient by itself to suggest defendants "acted with an intent or purpose to discriminate" against him based on race).

Accordingly, the Complaint is dismissed as to Carlsbad Police Officers John Does 1, 2 and 4, Jane Doe 3, and Sergeant Gomez.  Because Plaintiff is proceeding without counsel, and he has now been provided with notice of his Complaint's deficiencies, the Court will grant him leave to amend if he wishes to attempt to state a claim against these Defendants.  *See Rosati*, 791 F.3d at 1039 ("A district court should not dismiss a pro se complaint without leave to amend unless 'it is absolutely clear that the deficiencies of the complaint could not be cured by amendment.'") (quoting *Akhtar*, 698 F.3d at 1212).

## III.    State Law Claims

Finally, to the extent Plaintiff seeks to bring claims under state law, for intentional infliction of emotional distress for example, the Court may "decline to exercise supplemental jurisdiction" over any supplemental state law claim if it "has dismissed all claims over which it has original jurisdiction."  28 U.S.C. § 1367(c); *Sanford v. Member Works, Inc.*, 625 F.3d 550, 561 (9th Cir. 2010) ("[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine . . . will point toward declining to exercise jurisdiction over the remaining state-law claims.").  Because the Court has dismissed all of Plaintiff's federal claims, the Court declines to exercise supplemental jurisdiction over any state law claims at this time.

//

//

**IV.   Conclusion and Order**

For the reasons discussed, the Court:

1.   **DISMISSES** Plaintiff's Complaint in its entirety pursuant to 28 U.S.C. § 1915A(b) based on his failure to state a claim upon which relief may be granted and seeking monetary relief against Defendants immune from such relief.

2.   **GRANTS** Plaintiff sixty (60) days leave from the date this Order is filed in which to file an Amended Complaint which cures the deficiencies of pleading noted herein. Plaintiff's Amended Complaint must be complete by itself without reference to his original pleading.  Defendants not named and any claim not re-alleged in his Amended Complaint will be considered waived.  *See* S.D. Cal. CivLR 15.1; *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1546 (9th Cir. 1989) ("[A]n amended pleading supersedes the original."); *Lacey v. Maricopa Cnty.*, 693 F.3d 896, 928 (9th Cir. 2012) (noting that claims dismissed with leave to amend which are not re-alleged in an amended pleading may be "considered waived if not repled.").

If Plaintiff fails to file a timely Amended Complaint the Court will enter a final Order dismissing this civil action based both on his failure to state a claim upon which relief can be granted pursuant to 28 U.S.C. § 1915A(b) and his failure to prosecute in compliance with a court order requiring amendment.  *See Lira v. Herrera*, 427 F.3d 1164, 1169 (9th Cir. 2005) ("If a plaintiff does not take advantage of the opportunity to fix his complaint, a district court may convert the dismissal of the complaint into dismissal of the entire action.").  The Court **DIRECTS** the Clerk of Court to send a blank Southern District of California 42 U.S.C § 1983 Amended Complaint form to Plaintiff along with a copy of this Order.

**IT IS SO ORDERED**.

DATE: April 28, 2021

HON. MICHAEL M. ANELLO
United States District Judge

21cv252-MMA (AGS)